UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| HILTON PARKER LLC, | ) |
| | ) CIVIL COMPLAINT |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. _____ |
| | ) |
| JOHN DOE CORP., | ) |
| | ) **JURY DEMAND** |
| Defendant. | ) |

## COMPLAINT

Now comes HILTON PARKER LLC ("Hilton Parker" or "Plaintiff"), complaining as to the conduct of JOHN DOE CORP. ("Defendant"), as follows:

### NATURE OF THE ACTION

1.    Plaintiff brings this action for compensatory and punitive damages for common law defamation.

### JURISDICTION AND VENUE

2.    Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and there exists a complete diversity of citizenship among the parties.

3.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) as Defendant is an "entity with the capacity to sue and be sued in its common name" and is subject to personal jurisdiction in Ohio. *See* 28 U.S.C. § 1391(c)(2).

4.    In the alternative, venue is proper pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to the claims occurred within this District.

**PARTIES**

5. Plaintiff Hilton Parker LLC is an Ohio limited liability company with its principal place of business in Reynoldsburg, Ohio.

6. Defendant John Doe Corp. is, upon information and belief, a business entity or law firm.

7. On information and belief, Defendant resides in and is a citizen of New York.

8. On information and belief, Defendant is a business entity dedicated to collecting on consumer debts or is counsel for same.

9. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principles, trustees, sureties, subrogees, representatives, and insurers at all times relevant to the instant action.

**BACKGROUND – HILTON PARKER LLC**

10. Hilton Parker is a law firm dedicated to bringing and litigating Fair Debt Collection Practices Act ("FDCPA") suits against debt collectors who abuse or otherwise violate the rights of debtors.

11. Hilton Parker expends considerable time and effort to ensure that each and every client it serves is satisfied with the service provided. Hilton Parker's efforts to that end typically include repeated, significant, individualized attorney contact with each client throughout the process of bringing, litigating, and settling his or her suit, as well as regularly offering to discount its fees significantly in order to ensure that clients receive meaningful compensation even in the event of lower-than-average settlements.

12. Until February of 2021, Hilton Parker had received, to its knowledge, only eight reviews, combined, across all websites where it was possible for persons to publish reviews of Hilton Parker. Seven of these reviews were left by clients, while one was left by a bankruptcy attorney knowledgeable about Hilton Parker's practice.

13. Until February of 2021, all published reviews of Hilton Parker were highly complementary. Each review gave Hilton Parker five stars out of five and spoke of Hilton Parker and/or its constituent attorneys in glowing terms.

14. In early February of 2021, Hilton Parker was serving as plaintiff's counsel in over fifty FDCPA lawsuits against debt collectors, with approximately thirty of those cases having at least one defendant located in Buffalo, New York or the surrounding suburbs and cities.

15. In early February of 2021, settlement negotiations in two suits against Buffalo-area collectors became extremely fraught, even by the standards of oft-contentious FDCPA settlement negotiations. In both instances, the opposing party—in one case through counsel, and in the other *pro se*—falsely accused Hilton Parker attorneys of misconduct in bringing and pursuing the suits.

16. So far as Hilton Parker can determine, Hilton Parker had not committed any form of misconduct in either instance. In neither case did the relevant defendant seek sanctions or otherwise act on its assertion of misconduct.

### BACKGROUND – THE DEFAMATORY STATEMENTS

17. Roughly simultaneous with the two accusations of misconduct just described, two new reviews appeared on Hilton Parker's Google business page.

18. It appears that these two reviews were left on the same day. Prior to this point, Hilton Parker had only once received two separate reviews within the same month.

19. In the one of these two reviews, a person or entity going by the moniker "Darren Tucker" gave a one-star review of Hilton Parker with the following explanation:

> They made FALSE promises to get me money based off a debt i owed, they obviuously were unable to keep those promises! What I did receive was non stop phone calls and non stop solicitation for their services. If i could give thid company 0 stars i would!

20. Hilton Parker has never, to its knowledge, communicated with, let alone been retained by, anyone named "Darren Tucker."

21. The conduct described in this review does not fit with Hilton Parker's ordinary practices. Hilton Parker never promises outcomes. Indeed, Hilton Parker attorneys are so scrupulous about pointing out that nothing is guaranteed in the law that it sometimes becomes a source of annoyance for Hilton Parker clients. Moreover, Hilton Parker rarely, if ever, solicits past or present clients for additional work except where the client in question has indicated strong interest in pursuing additional claims.

22. The statements in the above review are wholly false.

23. On information and belief, the above review was not left by an individual named "Darren Tucker," but rather was left by Defendant.

[ 4 ]

24. On information and belief, Defendant John Doe Corp. is one of the debt collector defendants in the two suits whose resolutions were being negotiated at the time the review was left or is counsel for same.

25. In the other review published, on reference and belief, simultaneously with the review just described, a person or entity going by the moniker "John Caso" gave a one-star review of Hilton Parker with the following explanation:

> Never use this lawyer he is a scam and a fraud i did not get any money when he promised it and he kept it all. Noone should go thru what i went thru he is a fraud and MOSTLY a THIEF

26. Hilton Parker has, to its knowledge, never communicated with, let alone been retained by, anyone named "John Caso."

27. The conduct described in this review does not fit with Hilton Parker's ordinary practices.  As stated before, Hilton Parker never promises outcomes. Moreover, Hilton Parker strives to fully inform all clients of the consequences of any settlement and to discount its fees in those instances where the contingent fee permitted by the engagement letter would swallow the entire settlement.

28. The statements in the above review are wholly false.

29. On information and belief, the above review was not left by an individual named "Darren Tucker," but rather was left by Defendant John Doe.

30. On information and belief, Defendant Doe is one of the defendants in the two suits whose resolutions were being negotiated at the time the review was left or is counsel for same.

31. On information and belief, each Google account responsible for one of the two apparently simultaneous reviews just described was created specifically for the purpose of leaving the reviews anonymously.

32. Neither Google account responsible for leaving one of the reviews just described has made any other public "contributions" through Google.  For comparison, all six other Google reviews Hilton Parker has received were left by accounts that had previously made other contributions.

33. Hilton Parker first became aware of these reviews roughly two weeks after they were published.

34. Hilton Parker attorney Jonathan Hilton immediately responded to each review with the following message:

> I have reviewed our records, and we have no record of having had any clients by this name. If I am mistaken, please give me a call at 614-992-2277 and I will be happy to address your concerns.

35. On information and belief, the Google account associated with each review received a notification email informing the operator that the owner of a business they had reviewed had responded to their review.

36. More than three weeks have now elapsed following Mr. Hilton's responses without Hilton Parker receiving any contact from any person claiming to have left either review.

[ 6 ]

**BACKGROUND – HARM TO HILTON PARKER'S REPUTATION AND BUSINESS MODEL**

37. Hilton Parker's reputation is its business. Hilton Parker does not presently advertise, other than on its own website. Rather, Hilton Parker's new clients presently come from three sources: (1) repeat business from satisfied clients; (2) referrals from other attorneys; and (3) its reputation, in the form of word-of-mouth combined with the positive impression created by its sterling reviews on Google.

38. Hilton Parker strives to ensure that each client receives something of value for his or her FDCPA claims, and Hilton Parker does not take fees for its work where the client has not received some benefit, such as debt forgiveness or proceeds from a settlement.

39. Of course, as Courts have often acknowledged, "FDCPA suits usually entail significant awards of attorneys' fees, above and beyond any damages awarded." *Sanders v. Jackson*, 209 F.3d 998, 1004 (7th Cir. 2000). While the lion's share of the money received from FDCPA suits often (but certainly not always) goes to the plaintiff's lawyers, any allegation that Hilton Parker would keep "all" of a settlement, leaving a consumer empty-handed with not so much as debt forgiveness, is simply false.

**BACKGROUND – HILTON PARKER'S LOST REVENUES**

40. At any given time, FDCPA cases constitute approximately two-thirds of all matters being handled by Hilton Parker.

41. In 2020 alone, Hilton Parker received approximately $230,000 in revenue from its FDCPA cases.

42. Hilton Parker receives tens of thousands in additional revenue each year from other types of contingency fee cases, such as non-FDCPA consumer claims or personal injury claims.

43. Typically, Hilton Parker receives numerous inquiries from consumers each month regarding potential new FDCPA claims.

44. At a time when, due to the COVID-19 crisis, consumers are being harder pressed for cash than ever by debt collection agencies, Hilton Parker's phones have fallen comparatively silent.

45. On information, reference, and belief, consumers who would otherwise retain Hilton Parker for their FDCPA and other contingency claims are now shying away from hiring the firm.

46. Consumers are, understandably, wary of lawyers.  For an FDCPA suit to be successful, however, the lawyers and clients must trust one another.  For the lawyers to bring the suit, they must trust that the consumer will not independently take actions that will extinguish the lawyer's statutory fee claim, such as settling the case with the defendant covertly or simply directing that the case be dismissed.  Meanwhile, the clients must trust the lawyers not to overbill their hourly fees or misstate their hours to cheat them out of their FDCPA recoveries.

47. Defendant's false public accusations against Hilton Parker have damaged the firm's reputation, impeding the firm's ability to gain its clients' trust.  This not only reduces the number of FDCPA suits that the firm is able to bring, but it also threatens to lower the value of pending claims by interfering with the attorney-client relationship.

48. The damage that will be caused to Hilton Parker's FDCPA revenue in 2021 alone is likely to be greater than $75,000, to say nothing of future years.

49. Moreover, significant punitive damages are warranted in this case because, if Plaintiff is correct, an unscrupulous debt collector posted these complaints while settlement negotiations were ongoing in a pending case. Thus, Defendant acted with a high degree of malice toward Hilton Parker and intended, for Defendant's own material gain and to allow it to continue wantonly violating the FDCPA, to destroy Plaintiff's relationships with its consumer clients. *See Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir. 2001) (punitive damages must be considered when determining the jurisdictional amount in controversy).

### BACKGROUND – LOCATING PSEUDONYMOUS GOOGLE REVIEWERS

50. It is necessary to create a Google account in order to leave a review on a business's Google business page.

51. In the process of creating a Google account, the creator is required to provide a name, but that name is not verified in any way. The creator is also asked, but generally not required, to provide verification information including a phone number and/or a recovery email address.

52. Whenever a Google account is created or accessed, Google LLC creates a record of the IP Address of the user creating or accessing the account. *See How IP addresses work on Google*, Google Account Help, https://support.google.com/accounts/answer/1696588?hl=en (last visited Mar. 18, 2021)

53. IP Addresses, by themselves, do not identify individual users. *See id.*

54. IP Addresses are assigned to individual devices by Internet Service Providers. *See id.*

55. Because Internet Service Providers bill users for the internet service they provide, they necessarily possess records identifying the business that has been assigned a given IP Address for one of its devices.

56. Indeed, it is generally understood that Internet Service Providers are the usually only entities able to identify the user of a given IP Address.

57. A targeted subpoena to Google LLC should therefore suffice to determine the IP Address, and potentially any telephone number or recovery email address, associated with the pseudonymous Google accounts.

58. A targeted subpoena to the Internet Service Provider that provided the IP Address should thereafter suffice to determine the identity of the entity that created and employed the pseudonymous accounts.

### COUNT I — DEFAMATION

59. Plaintiff realleges the paragraphs above as though fully set forth herein.

60. Defendant John Doe Corp., employing the pseudonyms "Darren Tucker" and "John Caso," made the statements described above accusing Plaintiff of:

    a. having lied to clients;

    b. having improperly retained client funds;

    c. having made harassing solicitations for additional legal work;

    d. being "a scam and a fraud"; and

    e. being "MOSTLY a THIEF."

61. These statements were false.

62. Defendant published these statements to third parties—and informed such third parties that the statements referred to Plaintiff—by leaving them on Plaintiff's public-facing Google business page.

63. Defendant published these statements, on information and belief, with actual knowledge of their falsity and with the malicious intent to cause harm to Plaintiff's business.

64. "An allegation that one has acted unprofessionally constitutes defamation per se" under Ohio law. *Kanjuka v. Metrohealth Med. Ctr.*, 151 Ohio App. 3d 183, 192 (Ohio Ct. App. 8th Dist. 2002).

65. Further, false allegations that one is a criminal (such as a "thief") also constitute defamation per se.

66. Moreover, Plaintiff has suffered and will continue to suffer harm to its business interests, including the loss of past and future potential clients and the revenues that would have come with such clients, as a result of the publication of these defamatory statements.

WHEREFORE, Plaintiff respectfully requests judgment as follows:

 a. Permitting expedited discovery to allow Plaintiff to ascertain the identity of the unnamed Defendant;

 b. Declaring that the Defendant's conduct constitutes defamation;

 c. Awarding Plaintiff actual and nominal damages;

 d. Awarding Plaintiff punitive damages and attorney fees, as permitted by Ohio law,[1]

 e. Enjoining Defendant to take down its defamatory statements and to refrain from posting further defamatory statements in future; and

 f. Awarding such other relief as this Court deems just and appropriate.

**A TRIAL BY JURY IS DEMANDED.**

Dated:  March 29, 2021

              By:  s/ Geoffrey Parker

              Geoffrey Parker (0096049)
              HILTON PARKER LLC
              7544 Slate Ridge Blvd.
              Reynoldsburg, OH 43068
              Tel: (614) 992-2277
              Fax: (614) 927-5980
              gparker@hiltonparker.com
              *Attorney for Plaintiff Hilton Parker LLC*

---

[1] *See Casey v. Calhoun*, No. 41396, 1980 Ohio App. LEXIS 10339, at *18 (Ct. App. Oct. 9, 1980) ("In defamation cases, it is well established that attorney fees are recoverable as compensatory damages in situations in which an award of punitive damages is proper.").