UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

HILTON PARKER LLC,

        Plaintiff,

  v.

JOHN DOE CORP., *et al.*,

        Defendants.

:

:

:

Case No. 2:21-cv-1379
Judge Sarah D. Morrison
Magistrate Judge Elizabeth A. Preston Deavers

## OPINION AND ORDER

Plaintiff Hilton Parker LLC is a central Ohio-based law firm with a nationwide plaintive litigation practice. After a series of negative reviews appeared on Hilton Parker's Google business page, it brought suit against a pseudonymous entity for defamation. (ECF No. 1.) Following limited discovery, Hilton Parker amended its pleading to name, *inter alia*, Kristina Albergo (née DiMarco), Nicholas Albergo, and Nicole Pucciarelli as defendants.[1] (Second Amended Complaint ("SAC"), ECF No. 24.) The matter is before the Court for consideration of three substantially similar motions to dismiss for lack of personal jurisdiction filed by Ms. DiMarco[2] (ECF No. 29), Mr. Albergo (ECF No. 49), and Ms. Pucciarelli (ECF No.

---

[1] The SAC also names as defendants Daniel D'Elia, Richard Fiel, Capital Management Holdings, LLC, Elite Debt Brokers, LLC, Dressler & Associates, LLC, and Direct Cash, LLC. (*See* SAC.) Although David Dwyer and Rocky Mountain Capital Management, LLC are also named as defendants, Hilton Parker's claims against them have been dismissed. (*See* ECF No. 44.)

[2] To avoid confusion with her husband, Nicholas Albergo, the parties refer to Ms. DiMarco by her maiden name. (*See* SAC, ¶ 7.) The Court will do the same.

48). Hilton Parker responded (ECF Nos. 30, 56), and the three defendants replied (ECF Nos. 39, 65). For the reasons set forth below, the motions are **GRANTED**.

**I.      BACKGROUND**

The following summary draws from the allegations in the SAC.

**A.      The Parties**

Hilton Parker is an Ohio limited liability company with its principal place of business in Reynoldsburg, Ohio. (SAC, ¶ 6.) The company holds itself out as "a law firm dedicated to litigating Fair Debt Collection Practices Act ('FDCPA') suits against debt collectors who abuse or otherwise violate the rights of debtors." (*Id.*, ¶ 84.) Although nearly one-third of Hilton Parker's FDCPA suits have been brought in Ohio's federal courts, the firm's practice is "nationwide." (*Id.*, ¶ 176.)

Defendants Daniel D'Elia and Richard Fiel are the sole members of Capital Management Holdings, LLC, Elite Debt Brokers, LLC, Dressler & Associates, LLC, and Direct Cash, LLC. (*Id.*, ¶ 18.) Hilton Parker alleges that these four companies are alter egos of one another, and refers to the group as CMH+. (*Id.*, ¶¶ 22– 40.) CMH+ is a third-party debt collector that has previously been sued under the FDCPA. (*Id.*, ¶¶ 41, 42.) In FDCPA actions against CMH+ brought by Hilton Parker clients, CMH+ has engaged Ohio attorney and non-party Dean S. Hoover as counsel. (*Id.*, ¶ 75.)

Ms. DiMarco, Mr. Albergo, and Ms. Pucciarelli all reside in New York's Staten Island. (*Id.*, ¶¶ 7–9.) They are believed to be employees of one or more of the CMH+ entities. (*Id.*, ¶¶ 47–48, 59–64.)

2

B.     Google Reviews

On February 1, 2021, a disagreement not relevant to this suit between Geoffrey Parker (a Hilton Parker attorney) and Attorney Hoover "came to a head," with Attorney Hoover "conced[ing] the point." (*Id.*, ¶¶ 93, 95.) Less than twenty minutes later, "someone in Staten Island, NY created a Google account with the email address 'jcaso276276@gmail.com' and the display name 'John Caso.'" (*Id.*, ¶ 96.) The telephone number given for the account is Ms. DiMarco's phone number. (*Id.*, ¶ 97.) The account was "immediately used" to post a one-star review of Hilton Parker on Google:

> Never use this lawyer he is a scam and a fraud i did not get any money when he promised it and he kept it all. Noone should go thru what i went thru he is a fraud and MOSTLY a THIEF

(*Id.*, ¶ 98.) Hilton Parker alleges that the review was left by Ms. DiMarco and/or Mr. Albergo on the instruction of CMH+, Mr. D'Elia, and/or Mr. Fiel. (*Id.*, ¶¶ 102–06.) "John Caso" has never made another public post. (*Id.*, ¶ 108.)

Attorney Parker and Attorney Hoover had another run-in on March 29, 2021. (*Id.*, ¶¶ 146–51.) This time, a Google account with the display name "Eddie Vasquenz" posted a one-star Google review of Hilton Parker:

> They told me they could absolutely get a debt collector to stop calling me and compensate me for harassment, I got nothing and they stopped taking my calls. Ambulance chasers that don't deliver on their promises.

(*Id.*, ¶ 152 (emphasis omitted).) The Vasquenz account had been created two years prior, but had never left a review. (*Id.*, ¶¶ 155–56.) The telephone number given for the account is Ms. Pucciarelli's phone number. (*Id.*, ¶ 157.) Hilton Parker again

3

alleges that the review was left by Ms. Pucciarelli on the instruction of CMH+, Mr. D'Elia, and/or Mr. Fiel. (*Id.*, ¶¶ 164–65.)

Hilton Parker filed a one-count complaint alleging that the defendants defamed the company. (*See id.*, generally.) Ms. DiMarco, Mr. Albergo, and Ms. Pucciarelli have moved to dismiss. (ECF Nos. 29, 48, 49.)

## II. STANDARD OF REVIEW

Rule 12(b)(2) provides for dismissal of a lawsuit for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). The plaintiff bears the burden of proving that jurisdiction exists, *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991), "over each defendant independently." *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 504 (6th Cir. 2014) (internal quotation omitted). If a court rules on a Rule 12(b)(2) motion prior to trial, "it has the discretion to adopt any of the following courses of action: (1) determine the motions based on affidavits alone; (2) permit discovery, which would aid in resolution of the motion; or (3) conduct an evidentiary hearing on the merits of the motion." *Intera Corp. v. Henderson*, 428 F.3d 605, 614 n.7 (6th Cir. 2005) (citation omitted). "[T]he decision whether to grant discovery or an evidentiary hearing before ruling on a 12(b)(2) motion is discretionary." *Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 F. App'x 425, 434 (6th Cir. 2006) (citation omitted). Here, neither party has requested further discovery or an evidentiary hearing.

When a court resolves a Rule 12(b)(2) motion on "written submissions alone, the burden consists of a *prima facie* showing that personal jurisdiction exists." *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 505 (6th Cir. 2020) (internal

4

quotations and citation omitted). A plaintiff can meet the burden by "establishing with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)). Courts applying the *prima facie* standard weigh the evidence in the light most favorable to the plaintiff, and do not consider the defendant's controverting assertions. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998) (citations omitted). The court may, however, consider a defendant's undisputed factual assertions. *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). If "there does not appear to be any real dispute over the facts relating to jurisdiction, the *prima facie* proposition loses some of its significance." *Id.* (internal quotations and citation omitted).

Ms. DiMarco, Mr. Albergo, and Ms. Pucciarelli have filed sworn declarations in support of their respective motions. (*See* DiMarco Decl., ECF No. 29-1; Albergo Decl., ECF No. 49-1; Pucciarelli Decl., ECF No. 48-1.) Hilton Parker has not submitted any affidavits or declarations.

### III. ANALYSIS

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). In a diversity action, the law of the forum state is applied to decide whether personal jurisdiction exists. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000). To establish a *prima facie* case of personal jurisdiction, a plaintiff must demonstrate that (1) Ohio's long-arm statute has been satisfied and (2) exercising jurisdiction

would comport with the Due Process Clause of the Fourteenth Amendment of the United States Constitution. *Schneider v. Hardesty*, 669 F.3d 693, 699 (6th Cir. 2012); *Kauffman Racing Equip., LLC v. Roberts*, 930 N.E.2d 784, 790 (Ohio 2010).

### A. Ohio Long-Arm Statute

A due process failure "foreclose[s] the exercise of personal jurisdiction even where a properly construed provision of the long-arm statute would otherwise permit it." *Theunissen*, 935 F.2d at 1459. Because Hilton Parker has not carried its burden to set forth specific facts showing that this Court's exercise of personal jurisdiction over Ms. DiMarco, Mr. Albergo, or Ms. Pucciarelli comports with due process, the Court need not and does not address Ohio's long-arm statute.

### B. Due Process Clause

Due process requires that, in order for a federal court to exert power over an out-of-state defendant, the defendant must have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks and citation omitted). "[T]he defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The Due Process Clause of the Fourteenth Amendment recognizes two types of personal jurisdiction—general and specific— either one of which is adequate to confer jurisdiction over a defendant. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

6

"If a court has general jurisdiction over a defendant, it can adjudicate any claims involving that defendant, regardless of where the cause of action arose." *Maclin v. Reliable Reports of Tex., Inc.*, 314 F. Supp. 3d 845, 849 (N.D. Ohio 2018). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" *Goodyear*, 564 U.S. at 924. Hilton Parker concedes that this Court does not have general jurisdiction over Ms. DiMarco, Mr. Albergo, or Ms. Pucciarelli. (*See* ECF No. 30, 6.)

"Specific jurisdiction refers to jurisdiction over claims arising from or related to a defendant's contacts with the forum state." *Maclin*, 314 F. Supp. 3d at 849 (citation omitted). In *Southern Machine Co. v. Mohasco Industries, Inc.*, the Sixth Circuit set out a three-prong test to determine whether specific jurisdiction exists, while protecting a non-resident's due process rights:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

401 F.2d 374, 381 (6th Cir. 1968). "Failure to meet any one of the three prongs means that personal jurisdiction may not be invoked." *Maclin*, 314 F. Supp. 3d at 849 (citation omitted).

### 1. Hilton Parker fails to make a *prima facie* showing of purposeful availment.

Under *Southern Machine*, the Court first looks to whether Ms. DiMarco, Mr. Albergo, or Ms. Pucciarelli purposefully availed themselves of the privilege of acting or causing a consequence in Ohio. The Court cannot determine that they have.

"In the Sixth Circuit, the emphasis in the purposeful availment inquiry is whether the defendant has engaged in some overt actions connecting the defendant with the forum state." *Fortis Corp. Ins. v. Viken Ship Mgmt.*, 450 F.3d 214, 218 (6th Cir. 2006) (internal quotation and citation omitted). "[T]he issue is not the quantity, but the quality of a defendant's contacts with the forum state." *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 901 (6th Cir. 2017). These principles apply with equal force in intentional tort claims. *See Walden v. Fiore*, 571 U.S. 277, 286 (2014) (explaining that a court's "exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum").

Hilton Parker proposes that defendants' contacts with Ohio should be analyzed under the "effects test" laid out in *Calder v. Jones*, 465 U.S. 783 (1984). But, since *Calder* first came down, the Supreme Court has clarified its reach. *See Walden*, 571 U.S. at 290. The Sixth Circuit has explained:

> In *Calder*, the Supreme Court held that California could exercise jurisdiction over Florida defendants where the defendants had published an allegedly defamatory newspaper article about the California plaintiff. 465 U.S. at 791, 104 S.Ct. 1482. The Court found the defendants' contacts with California to be "ample": they had made numerous phone calls to sources located in California to write the article, they wrote about the plaintiff's activities in California, the story allegedly caused reputational injury in California where the

8

> publication was "widely circulated," and the plaintiffs suffered the "brunt" of the injury in California. *Walden*, 571 U.S. at 287, 134 S.Ct. 1115 (citing *Calder*, 465 U.S. at 788–89, 104 S.Ct. 1482). Jurisdiction was proper because "California [wa]s the focal point both of the story and of the harm suffered." *Calder*, 465 U.S. at 789, 104 S.Ct. 1482.
>
> In *Walden*, the Supreme Court held that a Georgia defendant was not subject to personal jurisdiction in Nevada when the defendant seized money and drafted an allegedly false affidavit about the Nevada plaintiffs. *Walden*, 571 U.S. at 279–81, 134 S.Ct. 1115. The defendant had "formed no jurisdictionally relevant contacts with Nevada" because he "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada." *Id.* at 289, 134 S.Ct. 1115. It was not sufficient that the plaintiffs had "strong forum connections" and suffered "foreseeable harm" in the forum state. *Id.* "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 290, 134 S.Ct. 1115. And the defendant's "actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections." *Id.* at 289, 134 S.Ct. 1115.

*Blessing v. Chandrasekhar*, 988 F.3d 889, 904–05 (6th Cir. 2021).

The nature of the internet—which seems to be both everywhere and nowhere—adds a wrinkle to the purposeful availment analysis. In 2019, our sister district examined whether an out-of-state defendant's defamatory Twitter post was sufficient to establish personal jurisdiction in the plaintiff's home state. *Vangheluwe v. Got News, LLC*, 365 F. Supp. 3d 850 (E.D. Mich. 2019). In that case, the plaintiff was wrongly identified by internet sleuths as the driver of the Dodge Charger that rammed into a group of counter-protestors at a Charlottesville rally, killing one and injuring many others. *Id.* at 853. A campaign began on Twitter to 'out' the misidentified killer, including by a practice known as "doxing."[3] *Id.* at 854–55.

---

[3] The *Vangheluwe* court explained:

9

Plaintiffs brought suit in their home district. *Id.* at 856. Several of the defendant Twitter users moved to dismiss, arguing that they were not subject to suit in the Eastern District of Michigan. *Id.* The court analyzed case law on internet defamation and distilled the following rule for determining personal jurisdiction:

> [M]erely posting a defamatory statement about the plaintiff online is not enough to hale the poster into the state where the plaintiff resides; instead, the poster's conduct must have involved the plaintiff's state in some additional way.

*Id.* at 857.[4] *See also Walden*, 571 U.S. at 290 (2014) ("[M]ere injury to a forum resident is not a sufficient connection to the forum. . . . The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."). Applying

---

> "[D]oxing" (sometimes spelled "doxxing") is short for "dropping documents." *See* Mat Honan, Wired, *What is Doxing?*, https://www.wired.com/2014/03/doxing/ (Mar. 6, 2014). The practice involves "using the Internet to source out and collect someone's personal and private information and then publicly releasing that information online." Beth Brindle, *HowStuffWorks: What is Doxxing?*, https://bit.ly/2RAb86E (last visited Jan. 19, 2019). The "goal of doxxing is typically retribution, harassment or humiliation." *Id.* Indeed, [Plaintiffs] allege, "Defendants created and participated in a doxing campaign specifically targeted at Michigan citizens, with a call to action in Michigan with the goal of inciting violence against and endangering them in Michigan."

365 F. Supp. 3d at 858–59.

[4] This Court has not identified a case in which the Sixth Circuit Court of Appeals formulated or adopted a rule on personal jurisdiction based on internet contacts. It has noted, however, that other "circuits have routinely held that 'posting allegedly defamatory comments or information on an internet site does not, without more, subject the poster to personal jurisdiction wherever the posting could be read (and the subject of the posting may reside).'" *Blessing*, 988 F.3d at 905 n.15 (quoting *Shrader v. Biddinger*, 633 F.3d 1235, 1241 (10th Cir. 2011)).

10

this rule, the court drew a jurisdictional line between tweets that included the plaintiff's Michigan home address, and those that did not. *Vangheluwe*, 365 F. Supp. 3d at 859.

Here, it is undisputed that Ms. DiMarco, Mr. Albergo, and Ms. Pucciarelli have none of the traditional, physical contacts with Ohio. (*See* DiMarco Decl., Albergo Decl., Pucciarelli Decl. *See also* SAC.) Even accepting as true the allegations in the SAC, these defendants' only contact with Ohio is posting a single false Google review about an Ohio business. This will not suffice to establish minimum contacts and purposeful availment. Nothing about the text of the reviews or the selection of Google—the archetypal Tech Giant—evinces an intent to specifically direct tortious conduct at the state of Ohio. *Cf. Creditors Relief LLC v. United Debt Settlement LLC*, No. 17-7474, 2019 WL 7288978, at *7 (D.N.J. Dec. 30, 2019) (finding that a New York resident's defamatory reviews of a New Jersey business to Google and the Better Business Bureau's website—"two nationally-utilized, general-purpose websites"—were insufficient to establish personal jurisdiction). The alleged defamation, in other words, lacks that "additional way" in which it connects to the forum state.

Hilton Parker argues for the opposite conclusion. (*See* ECF No. 30.) In its view, the *Calder* effects test is met because:

> The comments were concerned with the activities of Ohio-licensed attorneys operating an Ohio-registered Limited Liability Company. They impugned the professionalism and reputation of a business centered in Ohio—one which typically has half of its matters in Ohio, and which devotes 80% or more of its time to Ohio cases.

11

> The brunt of the harm was also suffered in Ohio. Because "Google My Business" shows Plaintiff's listing . . . primarily to local individuals looking for an attorney near them, most of the 4,000 individuals who saw the posts were Ohioans.

(ECF No. 30, 9–10.) But the Supreme Court clarified in *Walden* that the jurisdictional question must focus on the defendant's contacts with the forum state. 571 U.S. at 284 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Accordingly, the focus on Hilton Parker's case load and client mix, and Google's geolocational interactivity, is misplaced. The argument only "obscures the reality that none of [defendants'] challenged conduct had anything to do with [Ohio] itself." *Id.* at 289.

For the sake of completeness, the Court now moves to the second and third prongs of the specific jurisdiction analysis.

### 2. Hilton Parker's claims arise from the defendants' singular contact with Ohio.

The Court next examines whether Hilton Parker's claims against Ms. DiMarco, Mr. Albergo, and Ms. Pucciarelli arise out of their respective activities in Ohio. *See Beydoun*, 768 F.3d at 506–07. The Sixth Circuit has acknowledged that there is overlap between the first and second prongs' analysis. *Id.* at 507. The Google reviews are part and parcel of the conduct giving rise to this action. Accordingly, the "arising from" prong is satisfied.

### 3. This Court's exercise of jurisdiction would not be reasonable.

Finally, the Court must determine whether its exercise of jurisdiction over Ms. DiMarco, Mr. Albergo, and Ms. Pucciarelli is reasonable. The reasonableness

12

determination is made upon review of the following three factors: "(1) the burden on the defendant; (2) the forum state's interest; and (3) the plaintiffs' interest in obtaining relief." *Schmückle*, 854 F.3d at 903–04 (citing *City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 666 (6th Cir. 2005)). Review of these factors commands a finding that this Court's exercise of jurisdiction would not be reasonable. As to the first factor, Ms. DiMarco, Mr. Albergo, and Ms. Pucciarelli each state, under penalty of perjury, that travelling to Ohio would be burdensome on them and their families. (DiMarco Decl., Albergo Decl., Pucciarelli Decl.) Hilton Parker has neither disputed nor rebutted those statements. As to the second factor, Ohio certainly has an interest in ensuring that its citizens are able to conduct their business free from the tortious harm alleged here. But, in considering the third factor, the Court notes that Hilton Parker—a law firm with a nationwide plaintive litigation practice—is uncommonly well-positioned to seek relief in any of the several courts that indisputably have personal jurisdiction over the defendants.

### C. "Conspiracy Theory" of Jurisdiction

Hilton Parker alternatively argues that Ms. DiMarco, Mr. Albergo, and Ms. Pucciarelli are subject to this Court's authority under the "conspiracy theory" of personal jurisdiction. (ECF No. 30, 7.) "The Sixth Circuit has neither expressly adopted nor rejected the 'conspiracy theory' of personal jurisdiction[.]" *Stolle Mach. Co., LLC v. RAM Precision Indus.*, No. 3:10-cv-155, 2011 WL 6293323, at *7 n.2 (S.D. Ohio Dec. 15, 2011) (Rice, J.). Accordingly—and in light of the Supreme Court's admonition that "[d]ue process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant[,]" *Walden*, 571 U.S. at

13

284—this Court declines to apply the conspiracy theory here. *See Shepard & Assocs., Inc. v. Lokring Tech., LLC*, No. 1:20-CV-02488-PAB, 2022 WL 312711, at *15 (N.D. Ohio Feb. 2, 2022) (collecting cases in which district courts within this Circuit declined to apply the conspiracy theory of personal jurisdiction).

## IV. CONCLUSION

Hilton Parker has failed to show that this Court's exercise of personal jurisdiction over Ms. DiMarco, Mr. Albergo, and Ms. Pucciarelli comports with due process. Accordingly, their Motions to Dismiss for lack of personal jurisdiction (ECF Nos. 29, 48, 49) are **GRANTED**. Their further Motion to Dismiss (ECF No. 61) is **DENIED as moot**.

IT IS SO ORDERED.

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**